**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JASPER JONES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SET FORTH, INC.,<br><br>Defendant. | Case No.: 1:24-cv-13069<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Jasper Jones ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class Members"), brings this Class Action Complaint against Set Forth, Inc. ("Defendant" or "Set Forth"), and alleges, based upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1. Plaintiff brings this action on behalf of themselves and a nationwide class to address Defendant's failure to properly secure and protect the personal identifiable information ("PII") of its customers and other individuals whose data it collected, stored, and maintained.

2. On May 21, 2024, Set Forth discovered unauthorized access to its systems, resulting in a data breach that exposed the PII of approximately 1.5 million individuals. The compromised data included names, Social Security numbers, dates of birth, addresses, and potentially other sensitive information.

3. Despite discovering the breach in May 2024, Defendant delayed notifying affected individuals until November 8, 2024, depriving them of a timely opportunity to mitigate the harm.

4. Defendant's data security practices were grossly inadequate and failed to comply with industry standards, leaving sensitive data vulnerable to predictable and preventable attacks.

5. Plaintiff seeks damages, equitable relief, and statutory penalties for Defendant's failure to protect PII, negligence, and violations of federal and state privacy laws.

## THE PARTIES

6. Plaintiff Jasper Jones is a Citizen of North Carolina residing in Roanoke Rapids, North Carolina.

7. Set Forth, Inc. is a Delaware corporation with its principal place of business in Schaumburg, Illinois.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

9. This Court has personal jurisdiction over Defendant because Set Forth, Inc. is headquartered in Illinois and because all Defendant regularly conduct business in Illinois and have sufficient minimum contacts in Illinois.

10. Venue is proper under 18 U.S.C. § 1391(b)(1) because Defendant's principal place of business is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

### Defendant's Business Practices and Data Collection

11. Set Forth, formerly known as Debt Pay Gateway, is a financial services company founded in 2009.

12. Set Forth provides online account administrative services to consumers enrolled in debt relief programs, collecting and storing sensitive PII as part of its business operations.

13. Defendant purportedly claims to maintain customer funds in FDIC-approved accounts with strict controls to prevent access without the client's authorization.

14. Defendant collects and stores vast amounts of PII, including Social Security numbers, dates of birth, and addresses, from individuals utilizing its services.

15. Defendant's representations and policies promise robust security measures to protect sensitive data.

16. Defendant knew or should have known of the risks associated with storing sensitive PII without proper safeguards, as data breaches targeting companies in similar industries have become increasingly frequent.

17. Under state and federal law, businesses such as Defendant's have duties to protect their current and former consumers' PII and to notify them about breaches.

18. Defendant recognizes these duties, as stated in their "Privacy Policy":[1]

a. "Forth, Inc. (hereinafter "Forth™" or "Forth") is dedicated to protecting your privacy and providing you with the highest level of service."[2]

b. "To protect your personal information from unauthorized access and use, we use security measures that comply with federal law."[3]

---

[1] *Privacy Policy*, FORTH, https://www.setforth.com/privacy-policy/ (last accessed Dec. 11, 2024).
[2] *Id.*
[3] *Id.*

c. "These measures include computer safeguards and secured files and buildings."[4]

d. "We also attempt to limit personal information access to only employees, agents and representatives who need to know."

**The Data Breach**

19. Defendant's failure to encrypt sensitive data and implement adequate monitoring and detection systems facilitated the breach.

20. On May 21, 2024, the Set Forth data breach was discovered, when suspicious activity was detected on the company's system.[5]

21. As a result, the company initiated an investigation with the help of forensic specialists to understand the nature of the incident. The investigation found that personal information related to its consumers may have been accessed during the breach. The types of sensitive PII that may have been exposed include full names, addresses, dates of birth, and Social Security numbers.[6]

22. On or about November 8, 2024, Defendant issued a public notice about the breach. They then began sending notice letters to individuals whose personal information was compromised.

23. In a filing with the Office of the Marine Attorney General, Defendant confirmed that 1.5 million people were affected by this breach.[7]

---

[4] *Id.*
[5] American Debt Relief Service, Set Forth Breached, CYBERNEWS (Dec. 11, 2024), https://cybernews.com/security/american-debt-relief-service-set-forth-breached/.
[6] *Id.*
[7] Major Breach at American Debt Services Firm Exposes Data of Over a Million Customers, TECHRADAR (Dec. 11, 2024), https://www.techradar.com/pro/security/major-breach-at-american-debt-services-firm-exposes-data-of-over-a-million-customers.

24. Defendant concealed the breach from the Class, preventing them from taking timely action to mitigate their potential injuries.

25. Defendant's failure to implement adequate security measures directly resulted in the Data Breach. In other words, Defendant's negligence is evident in their inability to prevent the breach and protect personal information from cybercriminals.

26. As a result, Defendant caused widespread harm and financial damages.

27. Additionally, the Notice of Data Breach reveals that Defendant is either unable to unwilling to fully determine the scope of the breach, as they have not been able to fully determine the scope of the breach, as they have not been able to identify exactly what information was stolen or when it occurred.

28. Defendant has taken minimal steps to address the Data Breach. While they have offered some victims credit monitoring and identity protection services, these measures are grossly inadequate to compensate Plaintiff and Class Members for the harm cause.

29. Due to Defendant's Data Breach, the sensitive PII of Plaintiff and Class Members was exposed to cybercriminals, resulting in numerous injuries and significant damages.

30. Defendant acquired, collected, and stored the PII of Plaintiff and Class Members.

31. By obtaining, collecting, and storing the PII of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting the PII from disclosure.

32. Plaintiff received a Notice of Data Breach on or about November 8, 2024

33. Plaintiff's PII was compromised in the breach. As a result, Plaintiff was injured by Defendant's Data Breach.

34. Plaintiff provided his PII to Defendants and trusted the company would use reasonable measures to protect it according to Defendant's internal policies, as well as state and federal law. Defendant obtained and continues to maintain Plaintiff's PII and has a continuing legal duty and obligation to protect that PII from unauthorized access and disclosure.

35. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and relied on Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

36. On information and belief, Plaintiff's PII has already been published or will be published imminently by cybercriminal on the Dark Web.

37. Through Defendant's Data Breach, Defendant compromised Plaintiff's name, address, data of birth and Social Security number.

38. Plaintiff will spend a significant amount of time and effort monitoring his accounts to protect himself from identity theft. As directed by Defendant in their breach notice.

39. Plaintiff fears for his personal financial security and worries about what information was exposed in the Data Breach.

40. Plaintiff suffered actual injury from the exposure and theft of his PII, which violates his rights to privacy.

41. Plaintiff suffered actual injury in the form of damaged to and diminution in the value of his PII. PII is a form of tangible property that Defendants were required to adequately protect.

42. Plaintiff and Class Members have suffered actual injury, including the damage to and diminished value of their PII (which is a form of tangible property that Defendant were required to adequately protect), out-of-pocket expenses, and ongoing risks to their identities.

43. Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft due to Defendant's Data Breach.

44. Plaintiff anticipates spending considerable amount of time and money to try and mitigate his injuries.

45. Defendant failed to implement and maintain reasonable security measures to protect PII, including encryption, regular security audits, and robust monitoring systems.

46. Due to Defendant's failure to prevent the Data Breach, Plaintiff and Class Members suffered and will continue to suffer damages, including but not limited to, monetary losses, loss time, anxiety, and emotional distress.

47. Defendant could have prevented this Data Breach by properly securing and encrypting the systems containing the PII of Plaintiff and Class Members. Alternatively, Defendant could have destroyed the data, especially for individuals with whom it had not had a relationship with for a period of time.

48. Defendant's negligence in safeguarding the PII of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to companies like Defendant to protect and secure sensitive data they possess.

49. Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

50. The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[8] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[9]

51. The ramifications of Defendant's failure to keep secure the PII of Plaintiff and Class Members are long lasting and severe. Once PII is stolen, particularly Social Security Numbers, fraudulent use of that information and damage to victims may continue for years.

52. Defendant's actions violated industry standards, Federal Trade Commission ("FTC") guidelines, and its own privacy policies.

53. Defendant failed to timely detect and respond to the breach, allowing attackers to access and misuse sensitive data undetected for a prolonged period.

54. Defendant's insufficient post-breach response, including delayed notifications and inadequate remedial measures, further harmed Plaintiff and Class Members.

55. Defendant ignored numerous industry warnings and guidelines concerning the growing risk of cyberattacks and the need for robust data protection measures.

56. Defendant's failure to heed such warnings constitutes gross negligence, demonstrating a reckless disregard for the privacy and security of Plaintiff and Class Members.

**Value of PII**

---

[8] 17 C.F.R. § 248.201 (2013).
[9] *Id.*

57. The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[10] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[11] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[12]

58. Social Security Numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security Number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[13]

59. What is more, it is no easy task to change or cancel a stolen Social Security Number. An individual cannot obtain a new Social Security Number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of

---

[10] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at:* https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last accessed Dec. 11, 2024).

[11] *Here's How Much Your Personal Information Is Selling for on the Dark Web,* Experian, Dec. 6, 2017, *available at:* https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last accessed Dec. 11, 2024).

[12] *In the Dark,* VPNOverview, 2019, *available at:* https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last accessed Dec. 11, 2024).

[13] Social Security Administration, *Identity Theft and Your Social Security Number, available at:* https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed Dec. 11, 2024).

misuse of a Social Security Number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

60. Even then, a new Social Security Number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, “The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number.”[14]

61. Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to “close” and difficult, if not impossible, to change – Social Security Number and name.

62. This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, “Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market.”[15]

63. Among other forms of fraud, identity thieves may obtain driver’s licenses, government benefits, medical services, and housing or even give false information to police.

[14] Bryan Naylor, *Victims of Social Security Number Theft Find It’s Hard to Bounce Back,* NPR (Feb. 9, 2015), *available at:* http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft (last accessed Dec. 11, 2024).

[15] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at:* https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed Dec. 11, 2024).

64. Moreover, there may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[16]

65. At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding the PII of Plaintiff and Class Members, including Social Security Numbers, and of the foreseeable consequences that would occur if Defendant's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach.

66. Plaintiff and Class Members now face years of constant surveillance of their financial and personal record, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

67. Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, amounting to potentially millions of individuals' detailed, personal information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

68. To date, Defendant has offered Plaintiff and Class Members only 12 months of identity theft protection services through IDX. The offered service is inadequate to protect Plaintiff and Class Members from the threats they face for years to come, particularly in light of the PII at

[16] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf (last accessed Dec. 11, 2024).

issue here. Moreover, Defendant put the burden squarely on Plaintiff and Class Members to enroll in the inadequate monitoring services.

69. The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the PII of Plaintiff and Class Members.

70. By obtaining, collecting, using, and deriving a benefit from Plaintiff and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff and Class Members' Private Information from unauthorized disclosure.

71. Plaintiff and the Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

72. Plaintiff and the Class Members relied on Defendant to implement and follow adequate data security policies and protocols, to keep their Private Information confidential and securely maintained, to use such Private Information solely for business purposes, and to prevent the unauthorized disclosures of the Private Information.

**Defendant failed to properly protect Plaintiff's and Class Members' PII**

73. To prevent and detect unauthorized cyber-attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.
- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.
- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.
- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.
- Set anti-virus and anti-malware programs to conduct regular scans automatically.
- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.
- Configure access controls – including file, directory, and network share permissions – with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.
- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.
- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.
- Consider disabling Remote Desktop Protocol (RDP) if it is not being used.
- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.
- Execute operating system environments or specific programs in a virtualized environment.
- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[17]

74. To prevent and detect cyber-attacks, including the cyber-attack that resulted in the Data Breach, Defendant could and should have implemented, as previously recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer.** Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….
- **Use caution with links and when entering website addresses.** Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net)….
- **Open email attachments with caution.** Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

[17] *Id.* at 3-4.

- **Keep your personal information safe.** Check a website's security to ensure the information you submit is encrypted before you provide it….
- **Verify email senders.** If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.
- **Inform yourself.** Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or tip has been published.
- **Use and maintain preventative software programs.** Install antivirus software, firewalls, and email filters – and keep them updated – to reduce malicious network traffic….

75. Given that Defendant was storing the PII of Plaintiff and Class Members, Defendant could and should have implemented all of the above measures to prevent and detect cyberattacks.

76. The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of the PII of Plaintiff and Class Members.

77. In the Notice of Data Breach Letter sent on or around November 8, 2024 to Plaintiff, Defendant admitted that PII potentially impacted in the Data Breach contained Social Security Number.

78. Because Defendant failed to properly safeguard Plaintiff's and Class Member's PII, an unauthorized third party was able to access Defendant's network, and access Plaintiff's and Class Members' PII stored on Defendant's system.

## CLASS DEFINITION AND ALLEGATIONS

79. Plaintiff brings this action on behalf of themselves and all others similarly situated pursuant to Rule 23(a), 23(b)(1), 23(b)(2), 23(b)(3), 23(c)(4), and/or 23(c)(5) of the Federal Rules of Civil Procedure.

80. The Class that Plaintiff seeks to represent is defined as follows:

> All individuals residing in the United States whose PII was accessed and/or acquired by an unauthorized party as a result of the data breach in May 2024 reported by Defendant in November 2024.

81. Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

82. Plaintiff reserves the right to modify or amend the definition of the proposed class or add a class or subclass if further information and discovery indicate that the definitions of the class should be narrowed, expanded, or otherwise modified before the Court determines whether certification is appropriate.

83. **Numerosity**. The members of the Classes are so numerous that joinder of all members of the Classes is impracticable. According to the breach report submitted to the Office of Maine Attorney General, at least 1,500,000 Class Members were impacted in the Data Breach.[18] The Class is apparently identifiable within Defendant's records, and Defendant has already identified these individuals as evidenced by sending them breach notification letters.

[18] *See* Office of the Maine Attorney General, Data Breach Notifications (original release date Nov. 8, 2024), *available at* https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/5c00fedb-134a-4436-b778-5df30b84cdab.html (last accessed Dec. 11, 2024).

84. **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class that predominate over questions which may affect individual Class Members, including the following:

a. Whether and to what extent Defendant had a duty to protect the PII of Plaintiff and Class Members;

b. Whether Defendant had respective duties not to disclose the PII of Plaintiff and Class Members to unauthorized third parties;

c. Whether Defendant had respective duties not to use the PII of Plaintiff and Class Members for non-business purposes;

d. Whether Defendant failed to adequately safeguard the PII of Plaintiff and Class Members;

e. Whether and when Defendant actually learned of the Data Breach;

f. Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

g. Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their PII had been compromised;

h. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i. Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j. Whether Plaintiff and Class Members are entitled to actual damages and/or nominal damages as a result of Defendant's wrongful conduct;

k. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

85. **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Class.

86. **Policies Generally Applicable to the Class.** This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenges of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

87. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of the Class Members in that he has no conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages he has suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

88. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. Class action treatment is superior to all other available methods for fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

89. The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

90. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

91. Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

92. Unless a Class-wide injunction is issued, Defendant may continue in their failure to properly secure the PII of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

93. Further, Defendant has acted or refused to act on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

94. Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. Whether Defendant failed to timely notify Plaintiff and Class Members of the Data Breach;

b. Whether Defendant breached a legal duty to Plaintiff and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

c. Whether Defendant's security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

d. Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

e. Whether Defendant failed to take commercially reasonable steps to safeguard consumers PII;

f. Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

## CAUSES OF ACTION

### COUNT I
### Negligence
### (On Behalf of Plaintiff and the Class)

95. Plaintiff and the Class re-alleges and incorporates by reference all preceding allegations, as if fully set forth herein.

96. Plaintiff and the Class entrusted Defendant with their PII.

97. Plaintiff and the Class entrusted their PII to Defendant on the premise and with the understanding that Defendant would safeguard their information, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

98. Defendant has full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and the Class could and would suffer if the PII were wrongfully disclosed.

99. Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

100. Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Defendant's security protocols to ensure that the PII of Plaintiff and the Classes in Defendant's possession was adequately secured and protected.

101. Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII they were no longer required to retain pursuant to regulations.

102. Defendant also had a duty to have procedures in place to detect and prevent the improper access and misuse of the PII of Plaintiff and the Class.

103. Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class entrusted Defendant with their confidential PII, a necessary part of obtaining services from Defendant.

104. Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

105. A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly in light of Defendant's inadequate security practices.

106. Plaintiff and the Class were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the PII of Plaintiff and the Class, the critical importance of providing adequate security of that PII, and the necessity for encrypting PII stored on Defendant's systems.

107. Defendant's own conduct created a foreseeable risk of harm to Plaintiff and the Class. Defendant's misconduct included, but was not limited to, their failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Defendant's misconduct also included their decisions not to comply with industry standards for the safekeeping of the PII of Plaintiff and the Class, including basic encryption techniques freely available to Defendant.

108. Plaintiff and the Class had no ability to protect their PII that was in, and possibly remains in, Defendant's possession.

109. Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

110. Defendant had and continue to have a duty to adequately disclose that the PII of Plaintiff and the Class within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiff and the Class to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

111. Defendant had a duty to employ proper procedures to prevent the unauthorized dissemination of the PII of Plaintiff and the Class.

112. Defendant has admitted that the PII of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

113. Defendant, through their actions and/or omissions, unlawfully breached their duties to Plaintiff and the Class by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII of Plaintiff and the Class during the time the PII was within Defendant's possession or control.

114. Defendant improperly and inadequately safeguarded the PII of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

115. Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect the PII of Plaintiff and the Class in the face of increased risk of theft.

116. Defendant, through its actions and/or omissions, unlawfully breached their duty to Plaintiff and the Class by failing to have appropriate procedures in place to detect and prevent dissemination of PII.

117. Defendant breached its duty to exercise appropriate clearinghouse practices by failing to remove PII they were no longer required to retain pursuant to regulations.

118. Defendant, through its actions and/or omissions, unlawfully breached their duty to adequately and timely disclose to Plaintiff and the Class the existence and scope of the Data Breach.

119. But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and the Nationwide Class, the PII of Plaintiff and the Class would not have been compromised.

120. There is a close causal connection between Defendant's failure to implement security measures to protect the PII of Plaintiff and the Class and the harm, or risk of imminent harm, suffered by Plaintiff and the Nationwide Class. The PII of Plaintiff and the Class was lost

and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

121. Additionally, Section 5 of the FTC Act prohibits "unfair…practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

122. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

123. Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

124. Plaintiff and the Class are within the class of persons that the FTC Act was intended to protect.

125. The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

126. As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention,

detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and continuing consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of Plaintiff and the Class; and (viii) present and continuing costs in terms of time, effort, and money that has been and will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and the Class.

127. As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

128. Additionally, as a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

129. As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiff and the Class are entitled to recover actual, consequential, and compensatory damages.

130. Plaintiff and the Class are also entitled to injunctive relief requiring Defendant to i) strengthen its data security systems and monitoring procedures; ii) submit to future annual audits of those systems and monitoring procedures; and iii) continue to provide adequate credit monitoring to all Class Members.

**COUNT II**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

131. Plaintiff and the Class re-alleges and incorporates by reference each and every allegation in the Complaint as if fully set forth herein.

132. Plaintiff and the Class entrusted their PII to Defendant. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen.

133. In its Privacy Policy, Defendant represented that they had a legal duty to protect Plaintiff's and Class Member's PII.

134. Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

135. Defendant breached the implied contracts they made with Plaintiff and the Class by failing to safeguard and protect their personal information, by failing to delete the information of Plaintiff and the Class once the relationship ended, and by failing to provide timely and accurate notice to them that personal information was compromised as a result of the Data Breach.

136. As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and

economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

137. As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages.

**COUNT III**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

138. Plaintiff and the Class re-alleges and incorporates each and every allegation in the Complaint as if fully set forth herein.

139. Plaintiff and Class Members conferred a monetary benefit on Defendant, by providing Defendant with their valuable PII.

140. Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII.

141. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid their data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

142. Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary value of the benefit belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by industry standards.

143. Defendant acquired the monetary benefit and PII through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

144. If Plaintiff and Class Members knew that Defendant had not secured their PII, they would not have agreed to provide their PII to Defendant.

145. Plaintiff and Class Members have no adequate remedy at law.

146. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PII in their continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

147. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

148. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them.

**COUNT IV**
**Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA")**
**815 ILCS § 505/1, *et seq.***
**(On Behalf of Plaintiff and the Class)**

149. Plaintiff and the Class re-alleges and incorporates each and every allegation in the Complaint as if fully set forth herein.

150. Plaintiff and the Class are "consumers" as defined in 815 ILCS § 505/1(e). Plaintiff, the Class, and Defendant are "persons" as defined in 815 ILCS § 505/1(c).

151. Defendant engaged in "trade" or "commerce," including the provision of services, as defined under 815 ILCS § 505/1(b) and (d).

152. Defendant engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment and omission of material facts in connection with the sale and advertisement of their services in violation of the CFA, including: (1) failing to maintain adequate data security to keep Plaintiff's and the Class's sensitive PII from being stolen by cybercriminals and failing to comply with applicable state and federal laws and industry standards pertaining to data security, including the FTC Act; (2) failing to disclose or omitting material facts to Plaintiff and the Class regarding their lack of adequate data security and inability or unwillingness to properly secure and protect the PII of Plaintiff and the Class; (3) failing to disclose or omitting material facts to Plaintiff and the Class about Defendant's failure to comply with the requirements of relevant federal and state laws pertaining to the privacy and security of the PII of Plaintiff and the Class; and (4) failing to take proper action following the Data Breach to enact adequate privacy and security measures and protect Plaintiff and the Class's PII and other personal information from further unauthorized disclosure, release, data breaches, and theft.

153. These actions also constitute deceptive and unfair acts or practices because Defendant knew the facts about their inadequate data security and failure to comply with applicable

state and federal laws and industry standards would be unknown to and not easily discoverable by Plaintiff and the Class and defeat their reasonable expectations about the security of their PII.

154. Defendant intended that Plaintiff and the Class rely on its deceptive and unfair acts and practices and the concealment and omission of material facts in connection with Defendant's offering of goods and services.

155. Defendant's wrongful practices were and are injurious to the public because those practices were part of Defendant's generalized course of conduct that applied to the Class. Plaintiff and the Class have been adversely affected by Defendant's conduct and the public was and is at risk as a result thereof.

156. Defendant also violated 815 ILCS § 505/2 by failing to immediately notify Plaintiff and the Class of the nature and extent of the Data Breach pursuant to the Illinois Personal Information Protection Act, 815 ILCS 530/1, *et seq.*

157. As a result of Defendant's wrongful conduct, Plaintiff and the Class were injured in that they never would have provided their PII to Defendant, or purchased Defendant's services, had they known or been told that Defendant failed to maintain sufficient security to keep their PII from being hacked and taken and misused by others.

158. As a direct and proximate result of Defendant's violations of the CFA, Plaintiff and the Class have suffered harm, including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and the opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) actual misuse of the compromised data; (viii) nominal damages; (ix) the continued and certainly increased risk to their PII, which: (a) remains unexrypted and available for

unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

159. Pursuant to 815 ILCS § 505/10a(a), Plaintiff and the Class seek actual and compensatory damages, injunctive relief, and court costs and attorneys' fees as a result of Defendant's violations of the CFA.

**COUNT V**
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

160. Plaintiff and the Class re-alleges and incorporate each and every allegation in the Complaint as if fully set forth herein.

161. Plaintiff and Class Members had a legitimate expectation of privacy regarding their Private Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

162. Defendant owed a duty to Plaintiff and Class Members to keep their Private Information confidential.

163. The unauthorized disclosure and/or acquisition (*i.e.,* theft) by a third party of Plaintiff's and Class Members' Private Information is highly offensive to a reasonable person.

164. Defendant's reckless and negligent failure to protect Plaintiff's and Class Members' Private Information constitutes an intentional interference with Plaintiff's and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

165. Defendant's failure to protect Plaintiff's and Class Members' Private Information acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

166. Defendant knowingly did not notify Plaintiff and Class Members in a timely fashion about the Data Breach.

167. Because Defendant failed to properly safeguard Plaintiff's and Class Members' Private Information, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

168. As a proximate result of Defendant's acts and omissions, the private and sensitive Private Information of Plaintiff and the Class Members was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

169. Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their Private Information are still maintained by Defendant with their inadequate cybersecurity system and policies.

170. Plaintiff and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the Private Information of Plaintiff and the Class.

171. Plaintiff, on behalf of himself and Class Members, seeks injunctive relief to enjoin Defendant from further intruding into the privacy and confidentiality of Plaintiff's and Class Members' Private Information.

172. Plaintiff, on behalf of himself and Class Members, seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest, and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and Class Members, request judgment against Defendant and that the Court grant the following:

A. For an Order certifying the Class, and appointing Plaintiff and his Counsel to represent the Class;

B. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII of Plaintiff and Class Members, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

C. For equitable relief compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of Private Information compromised during the Data Breach;

D. For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendant's wrongful conduct;

E. Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class;

F. Enjoining Defendants from further unfair and/or deceptive practices;

G. Ordering Defendant's to pay for not less than three years of credit monitoring services for Plaintiff and the Class;

H. For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

I. For an award of punitive damages, as allowable by law;

J. For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

K. Pre- and post-judgment interest on any amounts awarded; and

L. Such other and further relief as this court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff and the Class hereby demands that this matter be tried before a jury.

Dated: December 19, 2024

Respectfully submitted,

By: */s/ Robert M. Foote*

Robert M. Foote (#3124325)
Bret Pufahl (#6325814)
Kathleen C. Chavez (#6255735)
Elizabeth C. Chavez (#6323726)
**FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC**
1541 E. Fabyan Parkway, Suite 101
Geneva, IL 60134
Telephone: (630) 228-9091
Facsimile: (630) 232-7452
rmf@fmcolaw.com
bkp@fmcolaw.com
kcc@fmcolaw.com
ecc@fmcolaw.com

William Audet (CA SBN 117456)
Ling Y. Kuang (CA SBN 296873)
**AUDET & PARTNERS LLP**
711 Van Ness Ave., Ste. 500
San Francisco, CA 94102
Telephone: (415) 568-2555
Facsimile: (415) 568-1776
waudet@audetlaw.com
lkuang@audetlaw.com

*Counsel for Plaintiff and the Proposed Class*